# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA OGLETREE, | ) 1:07cv0920 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Patricia Ogletree ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on December 5, 2003, alleging disability since May 1, 2003, due to arthritis in her back, hips and hands. AR 98-102, 118-123. After being denied initially

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 23, 2007, the Honorable Lawrence J. O'Neill reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 71-74, 76-80, 81. On May 9, 2006, ALJ Michael Haubner held a hearing. AR 297-339. ALJ Haubner denied benefits on September 8, 2006. AR 14-22. The Appeals Council denied review on April 25, 2007. AR 5-8.

Hearing Testimony

ALJ Haubner held a hearing in Fresno, California, on May 9, 2006. Plaintiff appeared with her attorney, Allan Cohan. Vocational expert ("VE") Judith Najarian also appeared and testified. AR 297.

Plaintiff testified that she was born in 1947. She completed the twelfth grade and completed two vocational college courses. AR 305-306. She last worked in 1997 as a grape inspector for the state.

Plaintiff lives with her husband, who is on disability. AR 308-309. She has a driver's license and hasn't driven for six months. AR 309-310. Plaintiff is able to brush her teeth and comb her hair, but her husband helps her get dressed. AR 310-311. She shops once a week, does laundry twice a week and cooks simple meals twice a day. AR 311. She does dishes but does not otherwise clean the house. AR 312. During the day, she spends about eight hours watching television. AR 313.

Plaintiff thought that she could lift and/or carry 10 pounds. AR 313. She can stand for about five minutes at one time and could walk about two blocks. AR 314. If she could shift around in her chair, she could sit for thirty minutes. AR 314. Plaintiff was wearing a brace on her right wrist for a hand fracture she sustained in a recent motor vehicle accident. AR 315.

Plaintiff testified that she has constant pain in her back and rated the pain as a five or six on a scale of one to ten. She takes medication for the pain, but the Vicodin makes her sleepy.

Plaintiff has also been seeing a psychiatrist once a month for the past year. AR 316-317. She explained that she has trouble concentrating and thought she could concentrate for about 20 to 30 minutes at a time before needing to rest for 15 to 20 minutes. AR 318-319.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education, language and experience. This person could lift and carry 50 pounds occasionally, 25

1  pounds frequently.  The VE testified that this person could perform Plaintiff's past relevant work
2  as a fruit inspector, as described in the Dictionary of Occupational Titles, and truck driver.  AR
3  323.  This person could also perform light, sedentary and unskilled medium work.  AR 324.

4        For the second hypothetical, the ALJ asked the VE to assume that this person could not
5  operate or be around machinery, could sit for 15 minutes at a time, could sit for less than two
6  hours out of an eight hour day, and could stand or walk less than two hours out of an eight hour
7  day.  This person "needs periodic periods of walking of about 30 minutes, total out of eight for
8  about five minutes at a time."  The VE testified that this person could not perform any work.  AR
9  324-325.

10       For the third hypothetical, the ALJ assumed that this person could handle money, do
11 simple repetitive one to two step tasking, and relate and interact.  This person could not carry out
12 an extensive variety of technical and/or complex instruction.  The VE testified that this person
13 could not perform Plaintiff's past relevant work but could perform a full range of unskilled work
14 at the sedentary, light and medium exertional levels.  AR 325-326.

15       The fourth hypothetical was based on Plaintiff's testimony.  The ALJ asked the VE to
16 assume a person who could lift and carry 10 pounds and stand for five minutes at a time.  This
17 person could concentrate in 20 to 30 minute increments, but then needed to rest mentally for 15
18 to 20 minutes.  This person uses only the right non-dominant hand as a helper hand.  This person
19 could not perform Plaintiff's past work or any other work.  AR 325.

20       When questioned by her attorney, Plaintiff clarified that she could lift 10 pounds with her
21 left hand, but less than 10 pounds with her right hand.  AR 329.  She also testified that she has
22 neck pain as well as numbness and burning in her legs.  AR 333.

23       <u>Medical Record</u>

24       Plaintiff saw Hosea Hawkins, M.D., on November 4, 2003, and reported the sole of her
25 right foot burned and hurt, and was getting worse.  She also complained of hip pain and wanted
26 "to sign up for disability."  AR 219.

27       Plaintiff had x-rays of her feet and lumbar spine taken on November 10, 2003.  The x-ray
28 showed a mild hallux valgus deformity at the base of the first toe on her left foot, as well as

degenerative disc disease at L3-L4 and hypertrophic anterolateral spurring of the lumbar spine, minimal. AR 220.

On February 2, 2004, Plaintiff underwent an orthopedic examination performed by Troy Smith, M.D. She complained of low back pain and problems with her feet. Plaintiff walked without evidence of a limp and could stand on her toes and heels without difficulty. Range of motion in her cervical spine was within normal limits. Range of motion in her lumbar spine was limited. There was tenderness to percussion in the lumbar area. She could flex her lumbar spine to 90 degrees without pain, but recovered with difficulty. Straight leg raising was to 80 degrees bilaterally without pain. Plaintiff had a metatarsal callus involving the second and third toe metatarsal area of the right foot. Range of motion of the upper and lower extremities was within normal limits and grip strength was 5/5 bilaterally. Motor strength was normal, as was her neurological examination. Dr. Smith diagnosed bilateral radiculopathy and low back pain, both due to uncertain etiology. Plaintiff could not perform repeated bending or heavy lifting. She could lift and carry 50 pounds occasionally and 25 pounds frequently. Plaintiff could stand and walk six hours out of an eight hour day, with normal breaks, and could sit without restriction. Plaintiff could kneel, squat and climb stairs and did not need a cane. AR 145-149.

Plaintiff saw Dr. Hawkins on March 22, 2004. She complained of pain radiating down her left hip and into her leg. AR 214.

Plaintiff underwent an MRI of her lumbar spine on May 27, 2004. The test revealed moderate multilevel degenerative changes, moderate central spinal stenosis at L3-L4 and L4-L5 with mild compression of the thecal sac and encroachment upon the exiting nerve root bilaterally, and mild central spinal stenosis at L2-L3 and L5-S1. There was also a 4mm left foraminal bulge at the L2-L3 level narrowing the left neural foramen and encroaching upon the existing L2 nerve root. The report concluded, "there is extensive degenerative disc disease and facet arthropathy at multiple levels." AR 210.

On May 27, 2004, Plaintiff began treatment at Madera County Behavioral Health Services, where she saw therapist Carole Parks. She complained of being anxious and worried, and reported suffering from sleep disturbances, an irregular appetite, poor concentration and

4

anger issues. On mental status examination, her mood was anxious and her thought process was tangential. Her judgment and insight were intact. She had mild limitations in "living arrangement" and moderate limitations in social relationships and daily activities. The therapist opined that there was a "probability of significant deterioration in an important area of functioning," but believed that Plaintiff could benefit from ongoing mental health treatment. Ms. Parks diagnosed generalized anxiety disorder and scheduled a follow up visit. AR 101-104.

Notes from Madera County Behavioral Health from November 2004 through January 2005 indicate that Plaintiff was generally feeling well. AR 158-161.

Plaintiff saw Dr. Hawkins on October 7, 2004. She complained of numbness in both legs and feet and constant back pain that increases with vacuuming and sweeping. She was referred to Stanford Neurosurgery. AR 199.

On December 9, 2004, Plaintiff saw Jongsoo Park, M.D., at Stanford Medical Center. On examination, Plaintiff had normal fine motor function, but had an unsteady gait with a positive Romberg. She was unable to perform tandem gait testing. She had limited range of motion in her spine secondary to pain. Straight leg raising was positive on the right. Sensory testing and motor strength were normal in her upper and lower extremities. AR 189-191.

Dr. Park reviewed the May 2004 MRI and noted that it revealed "multiple-level degenerative disk disease throughout with only moderate spinal stenosis at L3-L4, L4-L5." There was "[n]o significant cord compression or nerve root compression." AR 191. Based on Plaintiff's clinical history, neurologic examination and his review of the radiographic studies, Dr. Park diagnosed Plaintiff with degenerative disk disease with lumbar stenosis. He recommended that Plaintiff pursue conservative therapies and did not recommend surgery. Dr. Park discussed smoking cessation and recommended that Plaintiff receive a selective nerve root block at L3-L4, bilaterally. AR 191.

Treatment notes from December 20, 2004, reflect Dr. Hawkins' diagnoses of arthritis, low back pain and osteoporosis. AR 198.

On February 14, 2005, Dr. Hawkins completed a Lumbar Spine Residual Functional Capacity Questionnaire. He indicated that he had treated Plaintiff for the past six years for back

5

pain and hypertension. AR 192. Citing an MRI, Dr. Hawkins diagnosed Plaintiff with degenerative disc disease, spinal canal stenosis and nerve root pressure. She has decreased range of motion on side bending and flexion, positive straight leg raising test, abnormal gait, sensory loss, tenderness, muscle spasm and muscle weakness. Plaintiff's pain would frequently interfere with her attention and concentration and she could not operate or be around machinery. Dr. Hawkins believed that her prognosis was poor. She could walk for less than one block without rest, sit for 15 minutes at a time and stand for 15 minutes at a time. In an eight hour day, she could sit and stand less than two hours each. She needed to have periods of walking every 30 minutes, for five minutes at a time. Plaintiff needed a job that would allow her to shift from standing to sitting at will. She would frequently need to take unscheduled breaks. She had to elevate her legs with prolonged sitting, i.e., ten percent of the time in a sedentary position. Plaintiff also needed a cane while engaging in occasional standing/walking. Plaintiff could lift/carry less than 10 pounds occasionally, and could rarely lift/carry 10 pounds. She could occasionally crouch, rarely twist and stoop and never climb ladders or stairs. She also had limitations in using her upper extremities for grasping, fine manipulation and reaching. Plaintiff would likely be absent more than four days per month. AR 192-195.

Plaintiff saw Ms. Parks on February 16, 2005. She was in a mildly depressed mood but felt better after her session. AR 155.

On October 15, 2005, Plaintiff saw psychiatrist Marina C. Vea, M.D., at Madera County Behavioral Health Services. She complained of worsening nervousness, anxiety and irritability. On mental status examination, her mood was anxious and affect appropriate. Her thought process was intact, as was judgment and insight. Dr. Vea diagnosed anxiety, not otherwise specified, with a current GAF of 55. Her prognosis was fair. Dr. Vea prescribed Zoloft and referred Plaintiff for therapy. AR 225-227.

Dr. Vea completed a Mental Impairment Questionnaire on November 4, 2005. She noted that Plaintiff was not able to fill her Zoloft prescription and was given samples of Lexapro. It was too early to determine her response to the medication. For clinical findings, Dr. Vea noted "anxious, a little depressed, worried." With treatment and resolution of her stressors, Dr. Vea

believed that Plaintiff's prognosis was fair. Plaintiff's symptoms included generalized persistent anxiety, psychomotor agitation or retardation and sleep disturbance. AR 228-229.

On December 5, 2005, Dr. Hawkins responded to the ALJ's request for additional information relating to his February 14, 2005, assessment. AR 234, 295. Dr. Hawkins noted that the MRI of May 27, 2004, confirmed his diagnosis. Plaintiff suffers from low back pain, with radiation into both legs, numbness and muscle spasms. Any lifting, standing or walking increases that pain. Plaintiff could not operate or be around machinery because some of her medications may cause drowsiness or dizziness. AR 234. Dr. Hawkins enclosed a copy of the December 9, 2004, examination by Dr. Park and the May 27, 2004, MRI.

On December 17, 2005, Plaintiff saw Ekram Michiel, M.D., for a consultive psychiatric examination. Her chief complaint was that she has problems being around people. She also reported that she has been anxious and depressed for the past three years. Plaintiff reported that she is able to take care of her personal hygiene and sometimes helps with the household chores. She mainly stays at home and watches television. Plaintiff's mood was depressed, her affect was broad and appropriate and her thought content was goal directed. Insight, judgment and memory were normal. Dr. Ekram diagnosed depressive disorder, not otherwise specified, and listed her health condition as a stressor. Her GAF was 65. He opined that Plaintiff could maintain attention and concentration to carry out one or two step simple job instructions. She could relate and interact with coworkers, supervisors and the general public, but could not carry out an extensive variety of technical and/or complex instructions. AR 240-242.

On January 13, 2006, Plaintiff returned to Dr. Vea and reported that the Lexapro was helping. Dr. Vea noted that Plaintiff was improving. AR 276-277.

Plaintiff saw Archimedes R. Garcia, M.D., at Madera County Behavior Health on February 24, 2006. Although Plaintiff reported she continued to experience symptoms of depression, Dr. Garcia noted that Plaintiff had improved. AR 274-275.

In March 2006, Plaintiff was involved in a motor vehicle accident. She was seen in the emergency room and complained of right foot, back and neck pain. An x-ray of her right hand showed a mildly displaced fracture involving the distal fifth metacarpal bone. An x-ray of her

right foot showed sclerosis and a questionable nondisplaced fracture involving the proximal phalanx of the fourth toe. Plaintiff also underwent an MRI of her thoracic and lumbar spine. The thoracic MRI was normal, with mild multilevel degenerative changes consistent with Plaintiff's age. The lumbar MRI revealed moderate central spinal stenosis at L3-L4 and L4-L5 secondary to ligamentum flavum hypertrophy and facet arthropathy, which was causing transverse compression of the thecal sac and encroachment on both exiting nerve roots, milder changes at the rest of the levels, moderate multilevel degenerative changes, and a suggestion of small disc protrusions. AR 243-262.

On April 4, 2006, Plaintiff saw Dr. Hawkins and complained of numbness in the little finger on her right hand and pain in her neck radiating down her back. Dr. Hawkins diagnosed "c-spinal strain," mild whiplash, contusions to nose, low back strain and traumatic-induced neuritis of the right hand. AR 264.

Plaintiff saw Ana E. Mendoza, M.D., at Madera County Behavioral Health on April 12, 2006. Dr. Mendoza noted that she had some "deterioration" after the accident. She was instructed to continue Lexapro and return in eight weeks. AR 272-273.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of depressive disorder and lumbar disc disease with some stenosis and encroachment. Despite this, she retained the residual functional capacity ("RFC") to lift 50 pounds occasionally, 25 pounds frequently, and walk up to six hours in an eight hour day. Plaintiff was limited to simple, repetitive tasks with one or two step instructions. Based on the VE testimony, the ALJ concluded that Plaintiff could not perform her past relevant work but could perform the entire world of unskilled work at the sedentary, light and medium exertional levels. AR 21-22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (depressive disorder and lumbar disc disease with some stenosis and encroachment) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or

combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5) retains the RFC to perform a significant range of medium work. AR 21-22.

Plaintiff argues that the ALJ erred in (1) failing to document the application of the Psychiatric Review Technique; (2) rejecting Dr. Hawkins' opinion; and (3) analyzing Plaintiff's RFC.

## DISCUSSION

A.  Application of Psychiatric Review Technique

Plaintiff first argues that the ALJ failed to follow the procedure set forth in 20 C.F.R. § 416.920a, which requires the ALJ to rate the degree of functional loss resulting from a mental impairment.

20 C.F.R. § 416.920a sets forth the technique for evaluating a claimant's mental impairments and identifies four broad functional areas in which a claimant's functional limitations are rated. These areas include activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). After the degree of limitation is rated, the severity of a claimant's mental impairment is determined. 20 C.F.R. § 416.920a(d). Throughout the application process, the Commissioner documents the application of the technique. At the administrative hearing level,

> the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a(e)(2). The ALJ must therefore rate, and include in the decision, (1) the claimant's functional limitations in the areas of daily activities, social functioning, and concentration, persistence or pace as being either none, mild, moderate, marked, or extreme; (2) the claimant's episodes of decompensation as either none, one or two, three or four or more. 20 C.F.R. § 416.920a(c)(3)-(4), (e)(2).

1    Here, the ALJ found that Plaintiff's depressive disorder was a severe impairment and he
2 was therefore required to follow the technique set forth above. AR 18. A review of the ALJ's
3 decision confirms that he did not document the application of the technique, and Defendant
4 concedes as much. Defendant asserts, however, that the error was harmless because it did not
5 affect the outcome of the case. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004)
6 (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).
7    The Court agrees that the ALJ's legal error did not prevent him from adequately
8 considering Plaintiff's mental impairment and was likely harmless. However, the Ninth Circuit
9 has cautioned against dismissing such an error as a "mere technicalit[y]."³ Therefore, and
10 because this case is being remanded for additional reasons discussed below, the Court will
11 require the ALJ to document application of the technique on remand.
12 **B.   Dr. Hawkins' Opinion**
13    Next, Plaintiff contends that the ALJ improperly rejected Dr. Hawkins' opinions set forth
14 in his February 14, 2005, Lumbar Spine Residual Functional Capacity Questionnaire. She points
15 to Dr. Hawkins' December 5, 2005, reply to the ALJ's November 14, 2005, request for additional
16 information in support of her argument.
17    In response to Dr. Hawkins' February 14, 2005, assessment which would have precluded
18 all work, the ALJ sent Dr. Hawkins a letter requesting additional information. AR 295. He
19 explained that much of the handwriting was illegible and that he could not give much weight to a
20 "fill-in-the-blanks" form unless he obtained further information. ALJ Haubner therefore
21 requested (1) the bases for the limitations, including objective findings, symptoms and objective
22 tests; (2) specific limitations; (3) onset date and duration; (4) the approximate number of times he
23 saw Plaintiff; (5) the last time he saw Plaintiff; and (6) whether any limitations were based on
24 Plaintiff's subjective complaints. He also requested information as to Dr. Hawkins'
25 qualifications. AR 295.

---

³ This sentiment was expressed in the Ninth Circuit's unpublished decision in *Selassie v. Barnhart*, 203 Fed.Appx. 174 (9th Cir. 2006).

11

Dr. Hawkins responded by letter dated December 5, 2005. He noted that the MRI of May 27, 2004, confirmed his diagnosis. Plaintiff suffers from low back pain, with radiation into both legs, numbness and muscle spasms. Any lifting, standing or walking increases that pain. Plaintiff could not operate or be around machinery because some of her medications may cause drowsiness or dizziness. Dr. Hawkins enclosed a copy of the December 9, 2004, examination by Dr. Park and the May 27, 2004, MRI. AR 234-239.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray,* 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn,* 496 F.3d at 632; *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are

12

supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

Here, the ALJ explained in his decision that Dr. Hawkins' February 2005 assessment was partly illegible and lacked bases for its conclusions regarding Plaintiff's limitations. AR 19. He further explained that he requested additional information from Dr. Hawkins, "but nothing was ever submitted." AR 19. For these reasons, the ALJ gave Dr. Hawkins' opinion "little weight" and instead accepted the opinion of consultive examiner Smith. AR 19.

As Plaintiff points out, the ALJ did not acknowledge Dr. Hawkins' response. This failure, though, is not the root of the ALJ's error because Dr. Hawkins' letter was not wholly responsive to the ALJ's request. Rather, the ALJ improperly adopted the findings of Dr. Smith over those of Dr. Hawkins. While the ALJ is entitled to reject the treating physician's opinions in favor of those of the consultive examiner in certain situations, his decision to do so here was improper.

Dr. Smith's consultive examination was performed three months prior to the May 2004, MRI which revealed significant findings and, at the very least, confirmed Plaintiff's degenerative disc disease. Dr. Smith's diagnoses, then, of "bilateral radiculopathy due to *unknown* etiology" and "low back pain due to *unknown* etiology" and his resulting limitations, do not constitute substantial evidence in support of rejecting Dr. Hawkins' assessment in light of the May 2004 MRI. AR 148. In other words, the subsequent MRI essentially invalidated Dr. Smith's findings and the ALJ erred in his reliance thereon.

The Court also questions the ALJ's rejection of Dr. Hawkins' assessment. ALJ Haubner explains that the "fill-in-the-blanks/check-blocks form" was partly illegible and "lacked bases for the conclusions regarding limitations, such as signs, test results, and whether the limitations were based on Plaintiff's subjective complaints or objective findings or observations." AR 19. While such forms should sometimes be rejected, the ALJ's reasons for rejecting the assessment are suspect. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating

physician's conclusion). Although the ALJ suggests that he is unable to read the form, the handwriting is legible, albeit messy. AR 192-195. Moreover, although the ALJ believes that Dr. Hawkins' opinion is not supported by objective test results, Dr. Hawkins specifically cited the MRI in support of his opinion. AR 192. The ALJ also states that he requested information as to "how often and approximate dates that the form's signer consulted with other team members regarding claimant." AR 19. Whether Dr. Hawkins worked in conjunction with another source, however, is irrelevant to the analysis of a treating source opinion.

Finally, as mentioned above, ALJ Haubner is simply incorrect in stating that "nothing was ever submitted" by Dr. Hawkins in response to his request for information. AR 19. While Dr. Hawkins' response might not have contained the information the ALJ desired, it was a response, nonetheless.

Given the above, ALJ Haubner's treatment of the medical record suggests an affirmative effort on his part to interpret the evidence so as to deny benefits. The ALJ's decision is not supported by substantial evidence and this action should be remanded.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court has determined that the ALJ's reliance on Dr. Smith's opinion was not supported by substantial evidence. The Court also found that the ALJ did not provide specific

and legitimate reasons supported by substantial evidence in rejecting Dr. Hawkins' opinion.  In so finding, however, the Court is not necessarily endorsing Dr. Hawkins' limitations.  On remand, the ALJ should obtain another consultive examination.  The ALJ should also consider requesting a functional assessment from Dr. Park.

C.    RFC Determination

Finally, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence.  Because the Court has determined that the ALJ's reliance on Dr. Smith's opinion was improper, it follows that the physical RFC determination is not supported by substantial evidence.  Therefore, on remand, the ALJ should analyze the physical RFC based on the new medical evidence relating to Plaintiff's back.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Patricia Ogletree and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

Dated:   **June 5, 2008**                    /s/ **Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE